## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DAWN LYNN VANDENBOSS,**

      **Plaintiff,**　　　　　　　　**CIVIL ACTION NO. 14-CV-12283**

**vs.**　　　　　　　　　　　　**DISTRICT JUDGE ROBERT H. CLELAND**

　　　　　　　　　　　　　　**MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Dawn Vandenboss seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g).   (Docket no. 1.)   Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 19) and Defendant's Motion for Summary Judgment (docket no. 21).   Plaintiff filed a Response to Defendant's Motion.   (Docket no. 22.)   The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   (Docket no. 3.)   The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

### I.　　Recommendation

The undersigned recommends that Plaintiff's Motion for Summary Judgment [19] be GRANTED and that Defendant's Motion for Summary Judgment [21] be DENIED.   This matter should be remanded for further consideration of the opinion of Dr. William Crafton, Plaintiff's treating physician, as discussed herein.

1

## II.      Procedural History

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income with protective filing dates of November 30, 2011, alleging that she had been disabled since November 25, 2009, due to pain in her hips and knees. (TR 118-25; 139-41.)   Plaintiff later amended her alleged onset date to October 1, 2011.   (TR 135.)   The Social Security Administration denied benefits.   (*See* TR 13.)   Plaintiff then requested a *de novo* hearing, which was held on November 2, 2012, before Administrative Law Judge (ALJ) Melody Paige, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 19-29.)  The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review.   The parties then filed their instant Motions.

## III.     Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony

### A.       Plaintiff's Testimony and Medical Record

Defendant (docket no. 21 at 5-10), and the ALJ (TR 23-28) each set out a detailed factual recitation with regard to Plaintiff's medical record and hearing testimony.   Plaintiff addresses the relevant factual details in her argument.   (Docket no. 19 at 7-24.)   Aside from the medial evidence discussed herein, there are no material inconsistencies between these accounts; therefore, the undersigned will incorporate these factual recitations by reference.   Nevertheless, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

### B.       The Vocational Expert's Testimony

2

At the administrative hearing, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and work experience.   The ALJ then asked the VE to assume that this individual had the ability to perform a full range of sedentary work.   The VE testified that such an individual could perform a wide range of unskilled jobs, specifically including work in sorting and assembly.  (TR 51-52.)   The ALJ then asked the VE to assume that the individual would, "during the course of the shift have their right leg elevated to coffee table level."   (TR 52.)  The VE testified that such an individual could perform all of the same jobs.  (TR 52.)   The ALJ then asked the VE to assume that the individual could lift and/or carry only five pounds occasionally, could never stand or walk, could only sit for one hour at a time for a total of one hour in an eight-hour shift, needed to elevate her leg for four hours out of an eight hour shift, and would need to rest for 20 to 30 minutes out of every hour.  (TR 52-53.)   The VE testified that there would be no jobs that such an individual could perform.  (TR 53.)   Plaintiff's attorney did not question the VE.

## IV.    Administrative Law Judge's Determination

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014; that she had not engaged in substantial gainful activity since November 25, 2009, her original alleged onset date; and that she suffered from severe "left sciatica, and osteoarthrosis and degenerative joint disease in the bilateral knees and left hip."  (TR 21-23.)  The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 3.)   The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff could perform sedentary work, but "during the course of the workday, she will need to elevate her right leg to coffee table level."

(TR 23-28.)  The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 28-29.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from November 25, 2009, through the date of her decision.   (TR 29.)

## V.    Law and Analysis

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.   *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

4

substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

> **B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.   In the first four steps, Plaintiff was required to show that:

> (1)      Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2)      Plaintiff suffered from a severe impairment; and
>
> (3)      the impairment met or was medically equal to a "listed impairment;" or
>
> (4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).   If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.   If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).   The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.   To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

5

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).    Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).    Plaintiff argues that this matter should be reversed or, in the alternative, remanded because (1) the ALJ failed to properly evaluate her impairments under Listing 1.02A at Step III; (2) the ALJ failed to consider the effects of Plaintiff's obesity; (3) the ALJ failed to properly apply the treating-source rule to Plaintiff's physician's opinion; (4) the ALJ failed to properly evaluate Plaintiff's credibility; and (5) the ALJ erred when she used the term "coffee table level" in Plaintiff's RFC and her questions to the VE. (Docket no. 19.)

### 1.  Listing 1.02A

Plaintiff first argues that the ALJ erred by failing to find her disabled at Step III of the analysis, asserting that she meets the criteria for disability under Listing 1.02A.  In her analysis, the ALJ found as follows:

The criteria in Listing 1.00, Musculoskeletal, more specifically 1.02 Major Dysfunction of a Joint(s), are not satisfied.   The medical evidence fails to establish the following: a gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion, radiographic evidence of joint space narrowing, bony destruction or ankylosis of the affected joins(s), and involvement of one of the major peripheral weight-bearing joints that results in inability to ambulate effectively.   Therefore, the requirements of Listing 1.02 are not met.

(TR 23.)   Plaintiff contends that this analysis is deficient because it does not explain the ALJ's conclusion.

Under Listing 1.02, Major Dysfunction of a Joint, is

[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02.   Additionally, Section 1.00 defines the term *ambulate effectively*:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and

7

> from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*, Section 1.00B(2)(B).   Plaintiff argues that the ALJ's finding that she would "need to elevate her right leg to coffee table level" necessarily implies that she could not ambulate effectively and that she could not "sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."   (Docket no. 19 at 7-12.)

To the extent that Plaintiff challenges the ALJ's determination because it is a "conclusory blanket denial" that gives "absolutely no basis for her conclusion," an ALJ need not fully discuss the Step III findings so long "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that the Plaintiff did not meet the requirements for [the] listing."   *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (noting that it "would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five").   In her Step V analysis, the ALJ discussed the objective medical evidence supporting Plaintiff's allegations:

> Dr. Crafton noted valgus deformity, pre-patellar swelling, crepitus, small effusion, and decreased flexion and extension in the claimant's right knee.   In addition, the doctor took an x-ray of the claimant's right knee, which revealed marked medial and lateral osteoarthritis.   Accordingly, he assessed diagnoses of osteoarthrosis, insomnia, and joint pain in her leg.

(TR 25.)   And she noted that despite her allegations, Plaintiff "remains independent with ambulation and does not require any assistive devices."   (TR 27.)   And, "[m]ore importantly,

8

even with her walking and standing limitations, she is able to stand or walk long enough to complete activities of daily living and walk around the grocery store." (*Id.*) Therefore, reading the decision as a whole, the ALJ provided sufficient rationale for her Step III determination.

Additionally, the undersigned is not persuaded by Plaintiff's assertion that her need to elevate her leg to coffee table level prohibits her from being able to ambulate effectively. While she is certainly unable to walk while she has her leg raised, the ALJ did not find that she would have to continuously raise her leg the entire time she was at work. Nothing in the record supports an assumption that Plaintiff is unable to ambulate without an assistive device. And nothing in the record suggests that she has to have her let raised at all times. To the contrary, as Defendant notes, "Plaintiff herself testified that she could walk for five or ten minutes, and that she only elevated her leg 'probably off and on every 15 minutes.'" (Docket no. 21 at 13 (citing TR 43-44, 48-49).) Therefore, although Plaintiff points to objective medical evidence supporting her claim of osteoarthritis in her hips and knee, she has not shown that the ALJ erred in determining that she could ambulate effectively. At most, Plaintiff provides one reasonable interpretation of the evidence, but substantial evidence also exists to support the opposite conclusion. Therefore, this issue falls within the ALJ's zone of choice, and Plaintiff's Motion in this regard should be denied.

### 2. Plaintiff's Obesity

Plaintiff argues that the ALJ erred when she did not explicitly discuss Plaintiff's obesity in accordance with Social Security Ruling 02-01p.[1] Plaintiff's argument fails for two reasons.

---

[1] The Sixth Circuit has explained that "'Social Security Ruling 02–01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed.Appx. 574, 577 (6th Cir.2009) (quoting *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411–12 (6th

First, while SSR 02-01p does suggest certain guidelines for an ALJ to follow, the Sixth

Circuit has found that an ALJ does not need to explicitly "mention obesity if he credits an expert's

report that considers obesity."   *Coldiron v. Comm'r*, 391 F.App'x 435, 443 (6th Cir. 2010) citing

*Bledsoe v. Barnhart*, 165 F.App'x 408, 412 (6th Cir. 2006).   Here, in support of her argument,

Plaintiff cites to the report of Dr. Cheryl Lerchin, the consultative examiner.   (*See* docket no. 19 at

12.)   As Plaintiff states, Dr. Lerchin described Plaintiff as "an obese Caucasian female," noting

that she is "over 250 lbs, 5' tall and has severe back & hip & knee pain without carrying anything"

and that "[h]er large weight, short stance, bad knee, back and hip contribute to her depression."

(*Id.* (quoting TR 220).)   The ALJ, however, gave "significant weight" to Dr. Lerchin's opinion.

This credit alone would satisfy the Sixth Circuit's precedent.

Moreover, though, Plaintiff failed to mention obesity in any of her disability reports or at

her hearing.   That failure obviates the ALJ's need to thoroughly discuss a claimant's obesity.

*See Reynolds v. Comm'r*, 424 F.App'x 411, 416 (6th Cir. 2011) (holding that the ALJ did not err in

not discussing the plaintiff's obesity when the plaintiff had not listed obesity as one of her

impairments or as one of her difficulties on any paperwork put before the various levels of

_____

Cir.2006)).   The Ruling details how a claimant's obesity will be considered at the
various stages. At step two, an ALJ is to "do an individualized assessment of the
impact of obesity on an individual's functioning when deciding whether the
impairment is severe." 2002 WL 34686281, at *4.   Regarding step three, the
Ruling states: "obesity may increase the severity of coexisting or related
impairments to the extent that the combination of impairments meets the
requirements of a listing" and "[w]e may also find that obesity, by itself, is
medically equivalent to a listed impairment." 2002 WL 34686281, at *5.
Regarding a claimant's residual functional capacity, the Ruling provides: "As with
any other impairment, we will explain how we reached our conclusions on whether
obesity caused any physical or mental limitations."   2002 WL 34686281, at *7.

*Sleight v. Comm'r*, 896 F.Supp.2d 622, 630-61 (E.D.Mich. 2012) (Michelson, M.J.) adopted by
2012 WL 1986441 (quotation marks and citations omitted).

review.).   Therefore, Plaintiff's Motion should be denied in this regard.

### 3.   Plaintiff's Physician's Opinion

As the ALJ acknowledged, Plaintiff's treating physician, Dr. William Crafton, completed a Medical Assessment of Ability to Do Work Related Activities in this matter.   As accurately described by the ALJ, Dr. Crafton opined as follows:

> He indicated that claimant's pain complaints have been present since about 2006. Additionally, her symptoms cause sleep disturbance, as well as difficulty with standing, walking, bending, and stooping.   Specifically, he opined that she is unable to lift more than five pounds, cannot walk or stand for any length of time during an eight-hour workday, and is unable to twist, stoop/bend, crouch/squat, or climb ladders and stairs.   However, she can sit for one hour, but should elevate her legs throughout the day.   He was also of the opinion that she should take a twenty to thirty minute break every hour and will miss more than four days of work per month because of her symptoms.   Lastly, he stated that physical therapy may be beneficial, but the claimant is unable to afford it and even has difficulty affording her medications.

(TR 25.)   The ALJ, however, afforded Dr. Crafton's opinion little weight for several reasons:

- Although Dr. Crafton noted that Plaintiff had difficulty affording her medications, "there [was] no indication that she us unable to afford [them] as she readily admitted she remains compliant with all medications;"

- Although she does not have medical insurance, "there are plenty of free clinics and emergency room treatment available[, and t]he claimant failed to seek or receive any additional treatment;"

- Plaintiff's treatment was "strictly conservative in nature;"

- Dr. Crafton's assessment and his treatment notes are internally inconsistent because at her physical examinations, Plaintiff "never complained of, nor was it ever observed, that she had the significant difficulty with sitting, standing, walking, lifting, or performing postural activities that was (sic) noted in Dr. Crafton's Medical Assessment;"

- Dr. Crafton had recently advised Plaintiff to exercise daily, which "implies that, despite her impairments, he felt she retained the capacity to get some physical activity every day;"

11

- When Plaintiff presented to Dr. Lerchin, she "admitted independence with activities of daily living and ambulation," she "independently ambulated throughout the office and independently got on and off the examination table," her knees "had full range of motion and appeared stable without evidence of warmth, erythema, or effusion," and she had a "full range of motion in her left hip;" and

- Despite Dr. Crafton's opinions, Plaintiff was "able to drive, care for her personal needs, and assist with household chores, such as dishes, cooking, and making beds," including cooking meals "about three nights per week" and leaving her home two or three times a day."

(TR 26-27.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.   20 C.F.R. § 404.1527(c)(2).   But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.   *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).   Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."   *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).   The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1).   The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.   20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."   20 C.F.R. § 404.1527(c)(2).   Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

12

adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).   If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.   *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.   Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.   Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence.   *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision.   *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008).   There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).   *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v.*

13

*Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).   Moreover, an ALJ's failure to discuss the

factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so

patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner

adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3)

"where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural

safeguard of reasons—even though she has not complied with the terms of the regulation."

*Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d

541, 547 (6th Cir. 2004)).

Plaintiff contends that the ALJ erred because (1) the ALJ's finding that Plaintiff "never

complained of, nor was it ever observed, that she had . . . difficulty with sitting, standing, walking,

lifting, or performing postural activities" is not supported by the evidence; (2) the ALJ's reference

to "free clinics and emergency room treatment" was "created out of her fertile imagination;" (3)

the ALJ misinterpreted Dr. Crafton's advice to "exercise daily," (4) the ALJ's reliance on Dr.

Lerchin's opinion was improper because the examination was "obviously superficial and likely

biased;" (5) the use of Plaintiff's daily activities to undermine Dr. Crafton's opinion was improper;

and (6) the ALJ failed to give good reason for her decision under 20 C.F.R. §§ 404.1527(c)(2) and

416.927(d)(2).   (Docket no. 19 at 21.)

Defendant correctly points out that Plaintiff's attacks on Dr. Lerchin's credibility are

entirely misplaced.   Nothing in the record suggests that Dr. Lerchin, the ALJ, or the

Commissioner are biased against Plaintiff in any way.   And as noted, the ALJ's failure to

specifically analyzing the in 20 C.F.R. § 404.1527(c) factors is not, in itself, grounds for reversal.

Moreover, to the extent that the ALJ considered Plaintiff's daily activities, a full reading of the

14

ALJ's decision indicates that she did so not as a direct basis for rejecting Dr. Crafton's opinion, but as an example of the inconsistency between Dr. Craftron's findings and what Plaintiff told Dr. Lerchin.

Nevertheless, the undersigned is persuaded by Plaintiff's other assertions.   The ALJ's finding that Plaintiff "never complained of, nor was it ever observed, that she had . . . significant difficulty with sitting, standing, walking, lifting, or performing postural activities" is inapposite, if not inaccurate.   On October 13, 2011, Dr. Crafton's treatment notes indicate that Plaintiff had left hip pain that goes across her lower back, which was worse with exertion, including sharp and dull pain with numbness and tingling.   He also noted that her right knee would freeze up.   (TR 193.) In February of 2008, Dr. Crafton noted that Plaintiff had shooting pain down her thigh from her hip.   She also had "pain when standing for an increased period of time."   (TR 195.)   And as the ALJ acknowledged, "the doctor's records are nearly illegible."   (TR 25.)   Thus, the ALJ's determination that Plaintiff never complained of postural problems is merely an assumption based on a partial reading of illegible records.   The ALJ's finding implies that Dr. Crafton noted Plaintiff's hip and knee pain, diagnosed her with osteoarthritis, and then simply made up the limitations in the medical assessment form without basing them on his clinical observations or on Plaintiff's complaints.   The record provides no objective basis for such a finding.

Additionally, any suggestion that Plaintiff's failure to seek out free treatment somehow undermines her allegations of pain would impugn Plaintiff's credibility, not Dr. Crafton's. Nevertheless, it appears that the ALJ used this finding as part of her basis for weighing Dr. Crafton's opinion.   (TR 26.)   More importantly, though, it is unclear what the relied on in even suggesting that such treatment was available to Plaintiff and that it would have provided any relief.

Defendant attempts to cure this deficiency by noting that the ALJ's hearing office is based in the same county as Plaintiff, so "[t]he ALJ can reasonably be expected to have an awareness of the availability of medical services accessible to low-income and/or uninsured populations in her [area]." (Docket no. 21 at 21.)   But even if the ALJ is aware of such treatment locations, she had no way of knowing if they were a viable option for Plaintiff.

And finally, to the extent that the ALJ found Dr. Crafton's opinion inconsistent with his advice that she exercise regularly, the ALJ does not appear to have considered this advice in context.   As Plaintiff argues, the ALJ failed to consider that Dr. Crafton likely intended for Plaintiff to exercise within the bounds of her functional limitations.   Any assumption otherwise ignores Dr. Crafton's order to "[p]rogress with activity *as tolerated while under control*," and to continue using ice or heat and over-the-counter NSAID's as needed, even while performing exercises.   (TR 197, 198 (emphasis added).)

As discussed, the ALJ must give a treating physician's opinion complete deference unless it is unsupported by substantial evidence in the record and the ALJ gives good reason for holding otherwise.   Here, because the ALJ's rationale is unsupported by substantial evidence, this matter should be remanded for further proceedings.   This matter should not be remanded for an award of benefits because the ALJ may still find that Dr. Crafton's opinion is not entitled to controlling weight.   Moreover, even if Dr. Crafton's opinion is adopted, the ALJ must still determine whether Plaintiff is capable of performing a substantial number of jobs in the national economy under a newly developed RFC.

### 4.  Plaintiff's Credibility

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight

16

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

17

The ALJ found that Plaintiff was not wholly credible for essentially the same reasons as he found Dr. Crafton's opinion unreliable.   (*See* TR 26-27.)   Additionally, however, the ALJ found that Plaintiff's allegations were undermined by her amendment of her alleged onset date and her ability to sit through the hearing without shifting positions, taking a break, or elevating her leg. (TR 24, -27.)

With regard to her amended alleged onset date, the ALJ noted that her original onset date coincided with the day that her employer closed and that she collected unemployment benefits for about two years after that date.   The ALJ acknowledged that collecting unemployment benefits did not preclude the receipt of SSD benefits, but she found that Plaintiff simultaneously certifying that she was ready and able to sustain full-time employment was irreconcilable with her claim of disability.   Thus, the ALJ found that Plaintiff's amended alleged onset date, which followed her collection of unemployment benefits, to be troubling.   Additionally, the ALJ found it "noteworthy" that Plaintiff lacked any objective medical evidence from November 2009 through October 2011, which made it "entirely plausible that the claimant's proposed amendment took the complete absence of medical treatment during that timeframe into account."   (TR 24.)

Plaintiff, however, primarily challenges that ALJ's application of the "sit and squirm" analysis, which she argues "has long been rejected and condemned as a basis for questioning a claimant's credibility."   (Docket no. 19 at 23.)   Although Plaintiff is correct that this "test" has been discredited, the ALJ may rely on personal observations in making a credibility determination, so long as those observations are not the sole factor in the decision.   *See Weaver v. Sec'y of Health and Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (The ALJ discounted Plaintiff's pain "solely on the basis of his own observation of Weaver at the hearing," applying the "infamous and

thoroughly discredited 'sit and squirm' test."   "The ALJ must cite some other evidence for denying a claim for pain in addition to personal observation."); *Johnson v. Comm'r*, 2000 WL 332059 at \*4  (6th Cir. Mar. 22, 2000) ("The ALJ's personal observation was one of several factors, not the sole factor, in determining that Plaintiff's pain was not disabling.").

Here, although the ALJ's discussion of free clinics and Plaintiff's ability to "exercise" are cause for concern, there is still substantial evidence to support the ALJ's findings.   Thus, even if the Court would find otherwise, the ALJ's credibility finding is supported by substantial evidence and should not be disturbed.

### 5.   The ALJ's RFC Determination and Hypothetical Questions

Finally, Plaintiff argues that the ALJ's use of the term "coffee table level" was "hopelessly vague" and that the VE could not possibly have testified accurately without clarification.   (Docket no. 19 at 23-24.)   Plaintiff asserts that there is no standardized measurement for how high a coffee table is, and the ALJ never asked Plaintiff whether she rests her leg on another object, like a pillow, on top of the table.   (*Id.*)   The VE, however, testified without asking for clarification.   And, indeed, Plaintiff's attorney did not ask for clarification at the time of the hearing even though he was given the opportunity to do so.   And while it is the ALJ's responsibility to "investigate the facts and develop arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 111 (2000), Plaintiff has provided no reason that the ALJ should have assumed the VE's testimony was (or is) inaccurate or untruthful.

## VI.   Conclusion

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [19] should be GRANTED and Defendant's Motion for Summary Judgment [21] should be DENIED.   This

matter should be remanded for further consideration of the opinion of Dr. William Crafton, Plaintiff's treating physician, as discussed herein.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:   May 26, 2015                 s/ Mona K. Majzoub_____
                                                      MONA K. MAJZOUB
                                                      UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   May 26, 2015                s/ Lisa C. Bartlett
                                     Case Manager